UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Tiara Thomas,<br><br>　　　Plaintiff,<br><br>v.<br><br>Sterling Jewelers, Inc. d/b/a/ Jared The Galleria of Jewelry,<br><br>　　　Defendant. | Case No. 2:17-cv-00163-PPS-JEM<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES UNDER THE TELEPHONE CONSUMER PROTECTION ACT, INVASION OF PRIVACY AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Tiara Thomas ("Tiara"), is a natural person who resided in Gary, Indiana, at all times relevant to this action.

2. Defendant, Sterling Jewelers, Inc. d/b/a Jared The Galleria of Jewelry ("Jared") is a Delaware corporation that maintained its principal place of business in Akron, Ohio, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over this matter as it arises under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

4. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Plaintiff's State Law claims because those claims share a common nucleus of operative facts with Plaintiff's claims under the TCPA.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

6. Within the past twelve months, beginning around April, 2016, Jared began calling Tiara on Tiara's cellular phone ending in -3014 regarding a Jared account #XXXXX2148 ("The Account") using an Automatic Telephone Dialing System "(ATDS)".

7. On one or more occasions, within the past twelve months, Jared called Tiara while she was at church.

8. On one or more occasions, within the past twelve months, Jared called Tiara while she was sleeping.

9. On one or more occasions, within the past twelve months, Jared called Tiara while she was at work.

10. Tiara believes Jared called her more than 100 times in an effort to collect the debt.

11. When Tiara would answer the calls she would hear a short pause before being able to speak to a live representative from Jared.

12. When Tiara would answer the calls, she would hear a clicking sound before being able to speak to a live representative from Jared.

13. On at least one occasion, Tiara received calls and/or voice messages from Jared using an artificial or pre-recorded voice.

14. Shortly after the calls began, and on more than one occasion, Tiara communicated her desire that Jared cease calling her.

15. On one occasion, in an effort to get the calls from Jared to stop, Tiara told Jared something substantially similar to, "Please stop calling my phone nonstop harassing me, you call me while I'm at work, while I'm at church, while I am sleeping, while I am training. Can you please stop calling my phone?".

16. Jared unsympathetically and unapologetically replied that Jared was attempting to collect a debt.

17. Tiara repeatedly communicated Tiara's desire that Jared cease calling Tiara, including hanging up on Jared.

18. Despite these communications, Jared continued to call Tiara on Tiara's cellular phone with impunity.

19. During this same period of time, Jared also placed calls to Tiara's Fiancé's ("Fiancé") cellular phone, on information and belief, using an ATDS.

20. After answering one of the calls, Fiancé requested Jared to stop calling Fiancé's cellular telephone.

21. Despite this, Jared continued to place calls to Fiancé, on information and belief, using an ATDS.

22. During one conversation between Fiancé and Jared, Jared told Fiancé, after Fiancé again told Jared that she was not Tiara, something similar to, "I don't want to get yelled at, I have good news for Tiara".

23. During this same period of time, Jared began placing calls to Tiara's Grandmother ("Grandmother") on Grandmother's residential telephone who resides in Chicago, IL.

24. Despite Grandmother repeatedly informing Jared that Tiara did not reside with Grandmother, Jared continued to call Grandmother attempting to reach Tiara.

25. During this same period of time, on at least one occasion, Jared disclosed to Grandmother that Jared was attempting to collect a debt from Tiara.

26. During this same period of time, on at least one occasion, Jared left voice messages on Grandmother's residential answering machine.

27. Frustrated and bewildered with the calls, Grandmother repeatedly sent text messages to Tiara informing Tiara that Jared was continuing to call Grandmother.

28. Every time Tiara was notified by Grandmother that Jared was calling Grandmother, Tiara was embarrassed, stressed, anxious and suffered mental anguish.

29. In addition, Jared sent multiple letters regarding The Account to Grandmother's residence.

30. Jared's collection efforts, including but not limited to its disruptive and repeated telephone calls, caused Tiara significant emotional distress in the form of frustration, annoyance, aggravation, embarrassment and anxiety.

31. Jared's collection efforts also intruded upon Tiara's privacy.

32. In addition, each time Jared placed a telephone call to Tiara, Jared occupied Tiara's telephone number such that Tiara was unable to receive other phone calls at that telephone number while Jared was calling her.

33. Jared's telephone calls also forced Tiara to lose time by having to tend to Jared's unwanted calls.

34. Jared's collection efforts also forced Tiara to engage in uncomfortable conversations with Fiancé and Grandmother.

## APPLICABLE LAW UNDER THE TCPA

35. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

36. The TCPA defines an ATDS as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

37. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls.  The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

38. A telephone dialing system with predictive dialer functionality is an ATDS within the meaning of the TCPA.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

39. Jared used a telephone dialing system with predictive dialer functionality to place calls to Tiara on her cellular telephone.

40. The TCPA provides, in part:

    (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—

    (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

    (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

    * * *

    (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

    47 U.S.C. §§ 227(b)(1)(A)(iii).

41. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7999-8000, ¶ 72-73 (2015).

42. Tiara was the "called party" in each telephone call Jared placed to Tiara's cellular telephone.

43. The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

*Willful Violations of the TCPA*

44. The TCPA provides, in part:

    > If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

    47 U.S.C. § 227(b)(3).

45. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

46. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

47. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

48. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called. *See*

*Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla 2012); *aff'd* 755 F.3d 1265 (11th Cir. 2014).

## COUNT ONE

### Violation of the Telephone Consumer Protection Act

49. Tiara re-alleges and incorporates by reference Paragraphs 6 through 48 above as if fully set forth herein.

50. Jared violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Tiara on her cellular telephone without Tiara's prior express consent or after such consent had been revoked.

51. In addition, because Jared (a) voluntarily placed telephone calls to Tiara's cellular telephone number in violation of the TCPA, and (b) failed to place intermittent live verification calls to ensure that Jared had Tiara's express consent to be called using an ATDS, Jared's violations were willfully and knowingly made.

## COUNT TWO

### Invasion of Privacy by Intrusion upon Seclusion

52. Tiara re-alleges and incorporates by reference Paragraphs 6 through 48 above as if fully set forth herein.

53. Jared intentionally interfered, physically or otherwise, with the solitude, seclusion, and or private concerns or affairs of Tiara.

54. Jared intentionally caused harm to Tiara's emotional well-being by engaging in highly offensive conduct in the course of collecting a debt, as described herein.

55. Tiara has a reasonable expectation of privacy in Plaintiff's solitude, seclusion, and or private concerns or affairs.

56. The intrusion by Jared occurred in a way that would be highly offensive to a reasonable person in that position.

57. As a result of such invasions of privacy, Tiara is entitled to actual damages in an amount to be determined at trial from Defendant.

## JURY DEMAND

58. Tiara demands a trial by jury.

## PRAYER FOR RELIEF

59. Tiara prays for the following relief:

    a. An order enjoining Jared from placing further telephone calls to Tiara's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

    b. Judgment against Jared for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call Jared made in violation of the TCPA.

    c. Judgment against Jared in an amount to be determined at trial for the Invasion of Privacy by Intrusion upon Seclusion.

    d. For such other legal and/or equitable relief as the Court deems appropriate.

                                    RESPECTFULLY SUBMITTED,


Date: April 28, 2017                By: /s/ Jeffrey S. Hyslip
                                    Jeffrey S. Hyslip, Esq.
                                    Ohio Bar No. 0079315
                                    HYSLIP & TAYLOR, LLC, LPA
                                    1100 W. Cermak Rd., Suite B410
                                    Chicago, IL  60608
                                    Phone: 312-380-6110
                                    Fax: 312-361-3509
                                    Email: jeffrey@lifetimedebtsolutions.com
                                    Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, certify that on April 28, 2017, I filed a copy of the foregoing First Amended Complaint through the court's CM/ECF system, which will perfect service on the following counsel of record:

    Stephanie S. Penninger
    Benesch, Friedlander, Coplan & Arnoff LLP
    2300 One American Square
    Indianapolis, IN 46282-2132

           /s/ Jeffrey S. Hyslip